NO. 380-04534-2010

| | | |
|---|---|---|
| BERN A. MORTBERG | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| LITTON LOAN SERVICING L.P. | § | |
| BARRETT DAFFIN TURNER & | § | 380 JUDICIAL DISTRICT |
| ENGEL. LLP, | § | |
|     Defendants | | |

### PLAINTIFF'S ORIGINAL PETITION
### AND REQUEST FOR TEMPORARTY RESTRAINING ORDER

TO the Honorable Judge of Said Court:

Bern A. Mortberg complains of Litton Loan Servicing LP and Barrett Daffin Turner & Engel, LLP and for causes of action shows:

### DISCOVERY

1. The nature of this cause is such that discovery should be conducted under Discovery Control Plan, Level 2, pursuant to Tex. R. Civ. P. 190.2.

### PARTIES

2. Plaintiff expects to add several parties to this action as defendants, however, since time is of the essence, the principal defendants that must be restrained from conducting a wrongful non-judicial foreclosure are only name and served at this time.

3. Plaintiff, Bern A. Mortberg, hereinafter Plaintiff, owns as his homestead, 3724 Norwich Lane, Plano, Collin County, Texas, 75025.

1

4. Defendant Litton Loan Servicing LP (hereinafter "Litton"), is a Texas Limited Partnership with its home office and principal place of business located at 4828 Loop Circle Drive, Houston, Harris County, Texas, 77081 and may be served with service of process by serving its President and CEO, Larry B. Litton Jr. at that same address.

5. Barrett Daffin Frappier Turner & Engel, LLP, (hereinafter "Barrett") is a law firm which has as its principal place of business 15000 Surveyor Boulevard, Suite 100, Addison, Dallas County, Texas, 75001. The name of the actual substitute trustee from that law firm is illegible and thus is not named at this time. Barrett Daffin Frappier Turner & Engel, LLP may be served with service of process by serving its registered agent, Robert F. Frappier, at this same address.

## JURISDICTION AND VENUE

6. The District Courts of Collin County have jurisdiction and venue over this matter since it involves the homestead of Plaintiff which is fully located in Collin County, Texas.

7. Defendants committed various torts and breaches of contract and violation of state law, including the Texas Property Code in the State of Texas.

8. Venue is proper in Collin County, Texas as the suit involves real property located in Collin County, Texas.

## NATURE OF ACTION

9. This is a suit to enjoin and restrain a foreclosure sale posted under an unlawful declaration of default and acceleration of maturity of a promissory note.

## FACTS

2

10. Plaintiff purchased a certain tract of real property on December 7, 2004 from Aames Home Loan of Irving, Texas. The current note holder is not clear and will be an issue that will need to be litigated.

11. Litton, asserting that it is properly acting as the mortgage servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE OF THE AAMES MORTGAGE INVESTMENT TRUST 2005-1, as mortgagee of the of the non-referenced Note and Deed of Trust in Barrett's defective notice of non-judicial foreclosure.

12. That notice of foreclosure purportedly mailed on October 13, 2010, accelerated the maturity of the debt and posted the property for foreclosure in the same instrument and on the same date. See Exhibit "A", a true and correct copy of Barrett's improper notice of sale.

13. This violates the terms of the note and deed of trust which mandates a 45 period after notice to cure the default, before the property can be posted for sale. See true and correct copy of promissory note, attached as Exhibit "B". Plaintiff also requests that the Court take notice of the Texas Property Code §51.002 (d) which mandates notice of default first be given according to the terms of the deed of trust and only after that period of time has run, may notice of sale be given. In fact, the plain language of Plaintiff's promissory note allows 45 days to cure a default once notice is given. See letter confirming this from Litton attached as Exhibit "C". Litton and Barrett blatantly violated the law and the terms of the promissory note

## IMMINENT HARM

14. The home at issue in this lawsuit is Plaintiff's homestead, where his two children live

with him from time to time and has as a physical address 3724 Norwich Lane, Plano,

Collin County, Texas 75025.

15. Plaintiff alleges that neither Litton nor Barrett had the legal right to post this property

for sale at a public sale to take place no sooner than 12:00 p.m. on Tuesday,

November 2, 2010 at the Collin County Courthouse.

## PROBABLE RIGHT TO RELIEF

16. The Plaintiff avers that the note was not properly accelerated, nor was the correct

opportunity to cure given, nor was it proper to attempt to accelerate the note and post

the property for sale on the same date.

17. Additionally by letters dated October 4, 2010, an exemplar copy of which is attached

as Exhibit "D", the Attorney General of Texas, Greg Abbott demanded that 27

mortgage companies and/or mortgage servicing companies immediately suspend all

foreclosures until each company has reviewed the 18 items addressed in Attorney

General Abbott's letter. The third page of that letter clearly shows that it was sent to

Litton Loan Servicing. It is clear that Litton did not perform those acts, at least not to

Plaintiff's home, or it would have found the errors in its documentation.

18. Plaintiff was not given proper notice of default and the opportunity to cure provided

by the documents of purchase.

## PROBABLE IRREPARABLE HARM

19. Defendants' threaten to and unless restrained by this Court will, in violation of state

law and contract law, sell Plaintiff's homestead. The Plaintiff will suffer irreparable

4

harm and injury unless the foreclosure sale is restrained and enjoined. Such sale if allowed to proceed will deprive the Plaintiff and his children of the use and enjoyment of the property.

## INADEQUATE REMEDY AT LAW

20. The Plaintiff will show that there is no remedy at law that is clear and adequate to protect the Plaintiff's property interest against this wrongful foreclosure by the defendants. The Plaintiff requests injunctive relief so that justice may be done, not merely for delay.

WHEREFORE, the Plaintiff requests that:

1. A Temporary Restraining Order by issued without notice to the defendants, restraining them, their agents, servants, attorneys, substitute trustees and employees from directly or indirectly selling or attempting to sell the trust property on Tuesday, November 2, 2010 under the power of sale contained in the deed of trust.

2. That the defendants be cited to appear and show cause, and that on hearing a temporary injunction be issued enjoining defendants, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property under the power of sale contained in the deed of trust until this Court can make a determination of the merits of this lawsuit and of the respective rights of the parties.

3. That Plaintiff recovers costs of suit.

4. That Plaintiff be awarded other and further relief to which Plaintiff may be justly entitled.

## CERTIFICATION UNDER LOCAL RULE 2.3

No previous application for the same or similar relief has been sought, nor will the relief sought conflict with any previous order.

5

## VERIFICATION

STATE OF TEXAS §

_____ COUNTY §

Before me, the undersigned notary, on this day personally appeared Bern A. Mortberg, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified:

1. "My name is Bern A. Mortberg. I am over the age of eighteen, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I have read <u>PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR TEMPORARTY RESTRAINING ORDER</u> and all facts stated therein are within my personal knowledge and are true and correct."

_____
Bern A. Mortberg

STATE OF TEXAS §

Collin COUNTY §

Sworn to and subscribed to before me on ~~October~~ Nov 2 , 2010 by Bern A. Mortberg.


ELLEN HEAVNER
Notary Public
STATE OF TEXAS
My Comm Exp February 3, 2014

_____
Notary Public, the State of Texas

My Commission Expires: Feb 3, 2014

Respectfully submitted,

_____
Bern A. Mortberg
3724 Norwich Lane
Plano, TX 75025
Tel 214 649 4168
Fax 972 437 2027

6

Barrett Daffin F... ..ier Turner & Engel, LLP
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1163
Telecopier: (972) 386-7673

October 12, 2010

Certified Mail 7160 9668 9670 4919 7133
BERN ALAN MORTBERG
3724 NORWICH LANE
PLANO, TX 75025

RE:    Mortgage Servicer:    LITTON LOAN SERVICING, L.P.
       Loan No.:             18836213
       BDFTE No.:            20080025306236

This law firm represents LITTON LOAN SERVICING, L.P., the Mortgage Servicer, in its mortgage banking activities in the State of Texas. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the "Debt").

LITTON LOAN SERVICING, L.P. is acting as the Mortgage Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE OF THE AAMES MORTGAGE INVESTMENT TRUST 2005-1, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. LITTON LOAN SERVICING, L.P., as Mortgage Servicer, is representing the Mortgagee, whose address is:

      DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE OF THE AAMES MORTGAGE
      INVESTMENT TRUST 2005-1
      c/o LITTON LOAN SERVICING, L.P.
      4828 LOOP CENTRAL DRIVE
      HOUSTON, TX 77081

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

This letter is formal notice of the following:

1.    Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.

2.    On Tuesday, November 02, 2010, as designated on the enclosed Notice of Trustee's Sale, the Trustee, or the Substitute Trustee, will sell at the Courthouse of COLLIN County, Texas in the area designated by the Commissioner's Court of such County, or if no area is designated by the Commissioner's Court, in the usual and customary place in that County, to the highest bidder for cash, the Real Estate described in the enclosed Notice.

3.    All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by applicable Texas law. Payment must be made in certified funds, cashier's check or money order(s).

4.    All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.



SNT20080025306236

October 12, 2010

Certified Mail 7160 9668 9670 4919 7133
20080025306236
BERN ALAN MORTBERG
3724 NORWICH LANE
PLANO, TX 75025

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Mortgage Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely,

Barrett Daffin Frappier Turner & Engel, LLP

Enclosed: Notice of Trustee Sale

 

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

December 7, 2004        PLANO        Texas
[Date]           [City]           [State]

3724 Norwich Lane, Plano        , TX 75025
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 242,100.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Aames Funding Corporation DBA Aames Home Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.830 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on February 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 350 South Grand Avenue, 47th Floor, Los Angeles, CA 90071
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,747.84. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

DOC #:707091        APPL #:0002887156

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family**
**Amended for Texas** UR50 0011.02

**AP838NTX** (0302)

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4      Initials: _MM_

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of January, 2007 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and One Half percentage points ( 5.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.830 % or less than 7.830 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.830 %, or less than 7.830 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

In any 12-month period, I may prepay an amount not exceeding 20 percent of the unpaid balance without incurring a prepayment charge. I shall pay a prepayment charge, as permitted by law, if within 2 years of the execution of this Note and the Security Instrument securing this Note, I prepay an amount in excess of 20 percent of the unpaid balance in any 12-month period. The prepayment charge shall be in an amount equal to 6 months' advance interest on the amount prepaid in excess of 20 percent of the unpaid balance of this Note.

This prepayment penalty will be charged only if the interest rate in effect is less than 12.00% if the Property which secures this Note is owner-occupied or less than 18.00% if the Property is not owner-occupied. In no event will the prepayment penalty be charged if doing so would violate federal or state law. If a prepayment penalty and any other loan charges and interest exceed permitted limits, then the prepayment penalty shall be reduced by the amount necessary to reduce the prepayment penalty, other charges and interest to permitted limits.

If this Note is not in default, the Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.



By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of        $0.00        or        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

DOC #:707093                                    APPL #:0002887156

**AP838NTX** (0302)                              Page 3 of 4                              Initials: _____



## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Bern Alan Mortberg                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                          -Borrower

*[Sign Original Only]*



days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

DOC #:318026        APPL #:0002887156

-6(TX) (0311)        Page 6 of 16        Initials: _____        Form 3044  1/01

the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DOC #:318028                           APPL #:0002887156

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC  #:318030                    APPL #:0002887156



-6(TX) (0311)                         Page 10 of 16                    Initials: _BAM_

Form 3044  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to,. those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

DOC #:318031

APPL #:0002887156

VMP -6(TX) (0311)

Page 11 of 18

Initials: _____

Form 3044 1/01



notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.




**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

**23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.**

**24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. With any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.**

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

DOC #:318033

APPL #:0002887156

VMP® -6(TX) (0311)

Page 13 of 16

Initials: _RAM_



### Endorsement and Assignment of Note

Re: Loan No. __0002887156__     Date __12/09/04__

Borrower's Name: __Bern Alan Mortberg__

Property Address: __3724 Norwich Lane__

__Plano, TX  75025__

Note Date: __December 7, 04__

Loan Amount: __$242,100.00__

Los Angeles, California

For value received, I hereby transfer, endorse and assign to _____ the within Note and
Deed of Trust securing the same, so far as the same pertains to said Note, without recourse.

Aames Funding Corporation, DBA Aames Home Loan

X_____          X_____
  ,Assistant Secretary                ,Assistant Secretary

**Thuytien Phung**

AC702803.DOC (08/98)



EXHIBIT "A"

Lot 14, Block I of Highland Ridge VIII, an addition to the City of Plano, Collin County, Texas, according to the plat thereof recorded in Volume J, Page 868, Map Records, Collin County, Texas.



 **LLS™ Litton** Loan Servicing®

4828 Loop Central Drive
Houston, TX 77081
Telephone (800) 999-8501
Fax (713) 966-8906
www.littonloan.com

Sent Via Certified Mail
7113 8257 1472 8865 7619

Hours of Operation (CST)
Mon.: 8 a.m. - 8 p.m.
Tues. - Thurs.: 8 a.m. - 10 p.m.
Fri.: 9 a.m. - 5 p.m.
Sat.: 8 a.m. - 12 p.m.
Sun.: 10 a.m. - 2 p.m.

10/14/2008

BERN MORTBERG
3724 NORWICH LN
PLANO, TX 75025

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Re:   Deed of Trust/Mortgage Dated:   12/7/2004
      Loan #:                          18836213
      Property:                        3724 Norwich Lane
                                       Plano, TX 75025

Dear Mortgagor(s):

Litton Loan Servicing LP ("Litton"), on behalf of the owner and holder of your mortgage loan, and in accordance with the referenced Deed of Trust/Mortgage and applicable state laws, provides you with formal notice of the following:

The mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

To cure this default, you must pay all amounts due under the terms of your Note and Deed of Trust/Mortgage. As of 10/14/2008, the total amount necessary to bring your loan current is $36,856.90. Additional amounts may become due and payable under your Note and Deed of Trust/Mortgage after 10/14/2008. For the exact amount you must pay to bring your loan current, please contact our office at (800) 999-8501. Payment must be in the form of cashier's check, money order, or bank certified funds.

LITTON LOAN SERVICING LP IS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.



IF YOU ARE NOT OBLIGATED ON THE DEBT OR IF THE DEBT HAS BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING, THIS IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO ASSESS OR COLLECT THE DEBT FROM YOU PERSONALLY.

0700.0090.021108152052

7113 8257 1472 8865 7619

If you have not cured the default within forty five (45) days of this notice, Litton will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable. Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.

You have the right to reinstate your loan after acceleration and the right to bring a court action to claim that your loan is not in default or any other defense to acceleration and sale that you may have. This notice remains in effect until the default is cured.

According to Texas Property Code 51.0025, you are advised that Litton may administer the foreclosure of your property because Litton is representing Deutsche Bank National Trust Company, as Indenture Trustee of the Aames Mortgage Investment Trust 2005-1, a mortgagee whose address is 4828 LOOP CENTRAL DRIVE, HOUSTON, TX 77081-2226 under a servicing agreement with Deutsche Bank National Trust Company, as Indenture Trustee of the Aames Mortgage Investment Trust 2005-1. All inquiries, notices, payments, correspondence, and other communications concerning your loan must be directed to Litton for resolution, not to Deutsche Bank National Trust Company, as Indenture Trustee of the Aames Mortgage Investment Trust 2005-1. Litton's address for correspondence is Litton Loan Servicing LP, Attention: Customer Assistance Response Team, 4828 Loop Central Drive, Houston, Texas 77081. Litton's address for payments is Litton Loan Servicing LP, Attention: Cash Management Department, P.O. Box 4387, Houston, Texas, 77210-4387. Litton's toll-free number is (800) 999-8501.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287.

This matter is very important. Please give it your immediate attention.

Sincerely,

Default Administration Department





## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

October 4, 2010

JP Morgan Chase & Co.
270 Park Ave.
New York, New York 10017

      **RE:**    JP Morgan Chase & Co. Foreclosures in Texas

Gentlemen:

Recent troubling developments about the veracity of claims made on documents used by Ally Financial, Inc., in its foreclosure filings have led to an inquiry by our office as to the full harm Texas homeowners have suffered.

We know that you are aware of the issues raised when Ally Financial, Inc. announced that they were suspending foreclosures on certain properties in 23 states. JP Morgan Chase & Co. subsequently announced a similar move, again in the 23 "judicial foreclosure" states, apparently because you discovered that you had the same issue with certain of your employees, referred to as "robosigners." They had engaged in practices concerning the execution of documents which were used in foreclosures, among which were these:

- Signing thousands of documents per month
- Signing documents without reading them
- Signing affidavits which falsely claim personal knowledge of facts
- Signing affidavits which falsely claim the affiant reviewed the attached documents
- Notarizing documents prior to signing by the signer
- Notarizing documents when the signer was not present before the notary
- Filing affidavits with records attached that do not correctly reflect loan payments, charges and advances

We are aware that JP Morgan Chase & Co. (Chase) services a significant number of mortgage loans in the State of Texas. It is likely that affidavits and other documents, such as assignments of deeds of trust and appointments of substitute trustees, with the issues described above may have been used in connection with foreclosures in the State of Texas. Regardless of whether the foreclosure was a nonjudicial one or a judicial one in connection with a home equity loan, home equity line of credit or reverse mortgage, if any of the practices described above were utilized in establishing Chase's authority to conduct the sale or obtain a court order for a sale, such use would have been a violation of Section 17.46(a) of the Texas Deceptive Trade Practices Act; Section 392.304, Texas Debt Collection Act; Section 37.02, Texas Penal Code; Section 12.001, Texas Property Code; Section 406.009, Texas Government Code; Texas Constitution Article 16, Section 50; and/or Rule 736(1), Texas Rules of Civil Procedure, and the document and therefore the foreclosure sale would have been invalid.

JP Morgan Chase & Co.
October 4, 2010
Page 2

The State of Texas hereby demands that in the State of Texas, Chase immediately suspend all foreclosures, all sales of properties previously foreclosed upon, and all evictions of persons residing in previously foreclosed upon properties, until Chase has done the following:

1. Identify all Chase employees or agents who "robosigned," as described above, affidavits and other documents which were recorded in the State of Texas;

2. Identify all foreclosures in the State of Texas in connection with which an affidavit or other document with the characteristics listed above was used as part of the foreclosure process;

3. Describe the measures taken by Chase to ensure that affidavits and other documents are executed in compliance with Texas law;

4. Describe the measures taken by Chase to comply with the Servicemembers Civil Relief Act in connection with foreclosures;

5. Identify all other loan servicers and/or MERS for whom the above described employees or agents signed affidavits;

6. Provide assurances that all Chase foreclosures of properties in the State of Texas which relied upon documents with the characteristics described above will be rectified and the procedures by which they will be rectified;

7. Provide assurances that all future Chase foreclosures of properties in the State of Texas will be done with legally correct documentation; and

8. Identify all Chase employees or agents who are or who signed as officers of other non-related entities.

Please provide your response on or before October 15, 2010.

Sincerely,

Paul D. Carmona
Chief, Consumer Protection and
Public Health Division



## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

**Demand Letters sent to:**

American Home Mortgage Servicing, Inc.
American General Finance, Inc.
AmTrust Mortgage Corporation
Aurora Loan Servicec, Inc.
Bank of America
Carrington Mortgage Services, LLC
Cenlar, FSB
JP Morgan Chase & Co.
CitiMortgage, Inc.
EMC Mortgage Corporation
First Horizon National Corp.
Ally Financial, Inc./GMAC
Home Loan Services
HomEq Servicing, Inc.
HSBC North America Holdings, Inc.
Litton Loan Servicing, Inc.
MGC Mortgage, Inc.
Midland Mortgage Company
MorEquity, Inc.
National City Mortgage c/o PNC Financial Services Group, Inc.
Nationstar Mortgage Company
Ocwen Loan Servicing, LLC
OneWest Bank Group LLC
PHH Mortgage Services Corporation
Saxon Mortgage Services, Inc.
Select Portfolio Servicing, Inc.
Vanderbilt Mortgage and Finance, Inc.
Washington Mutual
Wells Fargo & Company
Wilshire Credit Corporation

NO. ___380- 4534-2010___

| | | |
|---|---|---|
| BERN A. MORTBERG | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| LITTON LOAN SERVICING L.P. | § | |
| BARRETT DAFFIN TURNER & | § | _____JUDICIAL DISTRICT |
| ENGEL. LLP, | § | |
| Defendants | | |

## AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| _Collin_ COUNTY | § |

Before me, the undersigned notary, on this day personally appeared Bern A. Mortberg, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified:

1. "My name is Bern A. Mortberg. I am over the age of eighteen, of sound mind, and capable of making this affidavit. I am the Plaintiff in the above referenced matter. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. The only income I have is from an hourly contract job that pays no overtime or sick days. My pay rate is $35.00 per hour and the normal work week is 40 hours. After taxes, this leaves me approximately $980.00.

3. I am divorced.

4. I own no other real property other than my homestead which is the subject matter of this lawsuit.

5. The total value of personal property I own is less than $750.00.

FILED
10 NOV -2 PM 2 07
HANNAH KEENE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY _____

1

6. My monthly expenses usually exceed my income. I have one checking account which is usually drawn down to almost zero between pay checks.

7. I have two children I help support.

8. I have made no transfer to any person of money or other property with a value in excess of $1,000.00 in the past several years that was without fair consideration.

9. I am not financially able to post a bond to cover any judgment against me in this case. All financial information that I provided to the lender was true and complete and contained no false statements or material omissions at the time it was provided to the lender. I have been out of work for one of the last three years and earn about 1/8 of the amount I used to. Due to my age it is very difficult to find a position that pays better. I have requested modification of my mortgage via the federal HAMP program but so far Litton only responds that they cannot locate my paperwork.

10. Upon oath and under penalty of perjury, the statements made in this affidavit are true"

_____
Bern A. Mortberg

STATE OF TEXAS        §

Collin    COUNTY       §

Sworn to and subscribed to before me on ~~October~~ Nov. 2 , 2010 by Bern A. Mortberg.

_____
Notary Public, the State of Texas

My Commission Expires: Feb 3, 2014

ELLEN HEAVNER
Notary Public
STATE OF TEXAS
My Comm. Exp. February 3, 2014

2